NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

| | |
|---|---|
| CARL P. VARRIALE, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :    Civil Action No.: 04-199 (JLL) |
| | : |
| BOROUGH OF MONTVALE, BOROUGH | :    **OPINION** |
| OF MONTVALE POLICE DEPARTMENT, | : |
| BOROUGH OF PARK RIDGE, | : |
| BOROUGH OF PARK RIDGE POLICE | : |
| DEPARTMENT, RAYMOND DRESSLER, | : |
| WILLIAM DILL & RAY COUGHLIN, | : |
| | : |
| Defendants | : |

---

**LINARES**, District Judge.

This matter comes before the Court on the motion for summary judgment pursuant to

Federal Rule of Civil Procedure 56 of Defendants Borough of Montvale ("Montvale"), Borough

of Montvale Police Department ("MPD"), Borough of Park Ridge ("Park Ridge"), Borough of

Park Ridge Police Department ("PRPD"), Raymond Dressler ("Dressler"), William Dill ("Dill"),

and Craig[1] Coughlin ("Coughlin") (collectively "Defendants"). This motion is resolved without

oral argument. Fed. R. Civ. P. 78. For the reasons herein, Defendants' motion for summary

judgment is granted in part and denied in part.

### JURISDICTION

This Court asserts jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §

---

[1]The Court notes that Defendant Coughlin is improperly denominated in Plaintiff's
Complaint as "Ray" Coughlin.

1

1331 and over Plaintiff's pendent state claims pursuant to 28 U.S.C. § 1367.

## BACKGROUND

**A.    Factual Background**[2]

Carl V. Varriale ("Varriale" or "Plaintiff") has been a Montvale resident since 1983 and has sought Montvale police assistance on several occasions. Plaintiff is of Italian and Greek national origin. Defendant Dill is a police officer with the MPD, Defendant Coughlin is a Sergeant for the PRPD, and Defendant Dressler is the Montvale Construction Code Official. Three separate incidents give rise to Plaintiff's Complaint.[3]

### 1.    The Cablevision Incident

The first incident (the "Cablevision Incident") relevant to the pending motion for summary judgment involves Defendants Dill, Montvale, and the MPD. On April 30, 2002, an employee of Cablevision Systems Corporation ("Cablevision") arrived at Plaintiff's home to disconnect Plaintiff's cable service. Plaintiff and Defendants dispute certain facts surrounding the Cablevision Incident, although it is undisputed that Cablevision's ladder ended up on Plaintiff's fenced-in property. The MPD was called and dispatched, and Defendant Dill arrived on the scene. Dill asked Plaintiff whether he could come onto Plaintiff's property to retrieve the Cablevision ladder. Plaintiff denied this request because he wanted to first purchase a disposable camera to document alleged damage to his fence caused by the ladder's fall.

---

[2]The following facts are undisputed unless noted otherwise.

[3]The Court notes that Plaintiff's Complaint sets forth wide-ranging allegations from both a chronological and subject-matter perspective. However, since Plaintiff, at the time that the Complaint was filed, was represented by counsel, there is no need to construe the Complaint liberally, and the Court will instead limit Plaintiff's claims to those specifically articulated in the "causes of action" portion of the Complaint.

That same day, Plaintiff arrived at the MPD headquarters to speak with Cablevision representatives and members of the MPD. While in the police station, Plaintiff was served with a summons charging Plaintiff with the disorderly persons offense of obstruction pursuant to N.J.S.A. 2C:29-1. Plaintiff admits that he was not arrested and no bail was set. (Varriale Dep. 87:6-24, Feb. 28, 2005). The matter was tried before the Honorable Roy F. McGeady, J.M.C., Municipal Court, Montvale, New Jersey ("Judge McGeady") in January, 2003. Judge McGeady convicted Plaintiff of the disorderly persons offense of obstruction. Judge McGeady imposed a $250 fine and $30 in court costs upon Plaintiff. Plaintiff appealed the conviction to the Superior Court, Law Division, Bergen County. On September 29, 2003, the Honorable Sebastian Gaeta, Jr., J.S.C., Superior Court, Law Division, Bergen County ("Judge Gaeta"), vacated the prior conviction and acquitted Plaintiff. Judge Gaeta determined that although Plaintiff's actions could have been within the statutory proscription of N.J.S.A. 2C:29-1, Plaintiff's Fourth Amendment rights absolved him of criminal liability. (September 29, 2003 Op. at 2-3). Since the police did not have a search warrant, Plaintiff was within his Fourth Amendment rights to deny them access to his property. (Id.).

**2.      The Construction Summonses**

The next incident began on June 19, 2003, when Defendant Dressler, the Montvale Construction Code Official, issued Summons No. 04430 to Plaintiff, charging Plaintiff with a violation of Montvale Ordinance § 104-9 (the "Grade Summons"). Ordinance § 104-9 addresses the act of raising the grade of a lot without a proper permit. On July 22, 2003, Dressler issued Plaintiff Summons No. 04881 (the "Permit Summons") (collectively the "Construction Summonses"), charging Plaintiff with a violation of N.J.A.C. 5:23-2.14(a). This statutory section

addresses construction work conducted without a proper permit.

Despite the Complaint in this matter being filed on January 16, 2004, the Grade Summons was not tried until April 22, 2004.[4] The Honorable Dennis LaHiff, J.M.C., Municipal Court, Waldwick[5], New Jersey ("Judge LaHiff"), presided over the trial and convicted Plaintiff of violating Montvale Ordinance § 104-9. Judge LaHiff also presided over the Permit Summons trial and denied Plaintiff's motion to dismiss on June 29, 2004. On September 23, 2004, following trial, Judge LaHiff found Plaintiff guilty of violating N.J.A.C. 5:23-2.14. Plaintiff appealed both convictions to the Superior Court, Law Division, Bergen County. By Order dated April 28, 2005, the Honorable Joseph S. Conte, J.S.C., Superior Court, Law Division, Bergen County ("Judge Conte"), affirmed both convictions. Plaintiff did not take an appeal from Judge Conte's decision.

### 3.        The Pizzeria Incident

Plaintiff alleges that on October 10, 2003, Plaintiff encountered a Montvale police detective[6] and Park Ridge Sergeant Coughlin in a local pizzeria (the "Pizzeria Incident"). (Compl. ¶ 5(e)). Plaintiff further alleges that the two verbally abused Plaintiff and that Coughlin threatened to harass Plaintiff if he were to travel in Park Ridge. (Compl. ¶ 5(e)). Defendant Coughlin denies that he verbally abused or threatened Plaintiff. Plaintiff alleges that following

---

[4]The Court notes that Plaintiff's malicious prosecution causes of action based on the Permit and Grade Summons were not ripe until such hearings were held and an appeal taken. However, Defendants have not raised this argument and the Court will instead address such causes of actions on the merits.

[5]This matter was transferred to the town of Waldwick, New Jersey due to Plaintiff's pending federal lawsuit against Montvale.

[6]Such detective is not a named defendant in this action.

4

the Pizzeria Incident, "[f]or sometime thereafter, Plaintiff avoided driving in Park Ridge, which was quite a burden." (Varriale Aff. ¶ 14). Plaintiff admits that following the Pizzeria Incident, he did not speak with Coughlin again. (Varriale Dep. 125:3-5, Feb. 28, 2005). Plaintiff also admits that as of the date of his deposition taken on February 28, 2004, he has traveled to Park Ridge since the Pizzeria Incident.[7] (Varriale Dep. 126:1-9; 127:15-24, Feb. 28, 2005).

**B.     Procedural History**

Plaintiff filed the instant Complaint on January 16, 2004. The Complaint sets forth various federal and state law claims, including some pursuant to 42 U.S.C. § 1983 for alleged violations of Plaintiff's rights under the United States Constitution and New Jersey Constitution, violations of Plaintiff's rights pursuant to the New Jersey Law Against Discrimination (the "NJLAD"), N.J.S.A. 10:5-12(a), et seq., and common law claims for malicious abuse of process and malicious prosecution. Defendants moved for summary judgment on September 1, 2005 and seek to have the Complaint dismissed with prejudice in its entirety.

## DISCUSSION

**A.     Standard for Summary Judgment**

Fed. R. Civ. P. 56(c) provides for summary judgment when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996). Alternately, summary judgment will be granted when the evidence on the record "is so one-sided

---

[7]Plaintiff admits to visiting Park Ridge for gasoline and to speak with the Park Ridge Police Chief.

that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Twp, 772 F.2d 1103, 1109 (3d Cir. 1985). The non-moving party cannot rest on mere allegations and must instead present actual evidence that establishes a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 256-57; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995); Sound Ship Bldg. Corp. v. Bethlehem Steel Co., 533 F.2d 96, 99 (3d Cir. 1976), cert. denied, 429 U.S. 860 (1976). In considering a motion for summary judgment, all evidence submitted must be viewed in the light most favorable to the party opposing the motion. Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 330 (3d Cir. 1995). However, even if the facts are undisputed, "summary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts." Ideal Dairy Farms, Inc. v. John Labatt, Ltd., 90 F.3d 737, 744 (3d Cir. 1996) (quoting Nathanson v. Med. Coll. of Pa., 926 F.2d 1368, 1380 (3d Cir. 1991).

The issue presently before the Court is to determine whether any genuine issues of material fact exist and whether Defendants are entitled to judgment as a matter of law on all claims set forth in the Complaint.

**B.      Liability Arising out of the Construction Summonses**

Plaintiff's "Fifth Cause of Action" alleges that "[t]he actions of Raymond Dressler have violated Plaintiff's rights, under the Federal and New Jersey Constitutions, to equal protection of the law, due process of law, and freedom from unreasonable searches and seizures." (Compl. ¶

16). Plaintiff seeks compensatory and punitive damages against Dressler individually and against Montvale on a failure to train theory pursuant to 42 U.S.C. § 1983.

After consideration of the Complaint and of Plaintiff's submissions to the Court, it appears to the Court that Plaintiff alleges a § 1983 claim for malicious prosecution in violation of his rights to due process and to be free from unreasonable searches and seizures and a § 1983 claim for violation of his equal protection rights. Defendants Dressler and Montvale move for summary judgment on these claims on the basis that Defendants cannot be held liable as a matter of law since Plaintiff's due process and Fourth Amendment rights were not violated and Plaintiff was not denied equal protection of law.

Section 1983, Title 42 of the United States Code authorizes a person to seek redress for a violation of his federal constitutional rights by a person who was acting under color of state law. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Section 1983 does not create substantive rights; but rather "it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996) (citations omitted). "[A] section 1983 claim has two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived a [] person of rights, privileges, or

immunities secured by the Constitution or laws of the United States." <u>Powell v. Ridge</u>, 189 F.3d 387, 400 (3d Cir. 1999); <u>see also</u> <u>Piecknick v. Pennsylvania</u>, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Dressler does not dispute that he was acting under color of state law at the time he issued the Construction Summonses to Plaintiff. However, Dressler seeks summary judgment since Plaintiff is unable to demonstrate that he has suffered a violation of rights secured by the Constitution. Dressler asserts that the issuance of the Grade Summons and the Permit Summons and Plaintiff's resulting convictions and unsuccessful appeals in these two matters did not violate Plaintiff's constitutional rights. Dressler argues that since Plaintiff was never detained, never arrested, never placed in jail or out on bail, only had to appear in municipal court twice to argue the Construction Summonses, was convicted twice, and such convictions were both affirmed, Plaintiff is unable to demonstrate the existence of an unlawful search or seizure, a violation of his due process rights, or an equal protection claim.

The Court has thoroughly reviewed Plaintiff's counter-statement of material facts submitted in conjunction with opposition to Defendants' motion and finds not one mention of Dressler or a construction summons. Further, Plaintiff's brief in opposition omits any reference to Dressler or any conviction pertaining to the Construction Summonses. When, as here, the nonmoving party fails to oppose the motion by written objection, memorandum, affidavits and other evidence, the court "will accept as true all material facts set forth by the moving party with appropriate record support." <u>Anchorage Assocs. v. Virgin Islands Bd. of Tax Review</u>, 922 F.2d 168, 175 (3d Cir. 1990). That is to say, failure to oppose a motion for summary judgment effects a waiver of the right to controvert the facts asserted by the moving party.  <u>Id.</u> at 175-76. Such

failure to oppose the motion does not, however, allow the district court to automatically grant a motion for summary judgment. Jaroma v. Massey, 873 F.2d 17, 20 (1st Cir. 1989). Such a rule would violate Fed. R. Civ. P. 56(e) ("If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.") (emphasis added). The "appropriateness" of summary judgment requires the court to determine that the moving party demonstrate that it is entitled to judgment as a matter of law. Anchorage Assocs., 922 F.2d at 175; Bowers v. Nat'l Collegiate Athletic Assoc., 118 F. Supp. 2d 494, 510 (D.N.J. 2000). Thus, summary judgment is not properly entered in favor of the moving party based solely on a failure to oppose the motion, without a determination that the moving party is entitled to judgment as a matter of law based on facts set forth in the motion. Anchorage Assocs., 922 F.2d at 171.

With this framework in mind, the Court turns to Plaintiff's § 1983 claims related to the Construction Summonses.

### 1.      Individual Liability of Dressler

a.      *Malicious Prosecution*

Plaintiff alleges that Dressler's malicious prosecution of Plaintiff violated his due process rights and right to be free from unreasonable searches and seizures in violation of 42 U.S.C. § 1983. Dressler asserts that Plaintiff may not make out a claim for malicious prosecution because both matters initiated by Dressler resulted in convictions which were later affirmed by the Superior Court. Thus, Dressler argues that Plaintiff fails to state a claim for malicious prosecution pursuant to § 1983 under the Fourth Amendment since Plaintiff is unable to satisfy an essential element of the claim, namely, that the prosecution resulted in an outcome favorable

to Plaintiff.

The Court notes that the Complaint appears to set forth a malicious prosecution claim based on violations of Plaintiff's due process and Fourth Amendment rights. However, Plaintiff makes no specific allegation in any submission to the Court regarding any violation of either his procedural or substantive due process rights. The Third Circuit has held that a claim for malicious prosecution cannot be based upon substantive due process, but can be based on the Fourth Amendment, procedural due process, or other explicit text within the Constitution. <u>Torres v. McLaughlin</u>, 163 F.3d 169, 173 (3d Cir. 1998). However, Plaintiff has not set forth any facts or argument in support of a malicious prosecution claim based on violation of his procedural due process rights. Accordingly, this Court will analyze such claim within the limited framework of a Fourth Amendment violation.

To state a § 1983 claim for malicious prosecution under the Fourth Amendment, a plaintiff must demonstrate that: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." <u>Estate of Smith v. Marasco</u>, 318 F.3d 497, 521 (3d Cir. 2003) (citing <u>Donahue v. Gavin</u>, 280 F.3d 371, 379-80 (3d Cir. 2002)). Here, it is undisputed that neither the prosecution of the Grade Summons nor Permit Summons ended in Plaintiff's favor. Plaintiff was convicted in both matters and both convictions were ultimately affirmed in the Superior Court. Plaintiff did not appeal either affirmance and his opportunity to do so has passed. Thus, Plaintiff cannot establish one of the requisite elements for a § 1983 malicious prosecution

10

claim. Accordingly, Dressler is GRANTED summary judgment on this claim. Plaintiff's § 1983 claim for malicious prosecution as alleged against Dressler is DISMISSED with prejudice.

        b.    *Equal Protection*

Plaintiff also asserts an equal protection claim against Dressler. Although the Complaint does not set forth a specific basis for such claim, the Complaint contains allegations that Montvale and the MPD have stereotyped Plaintiff because of his Italian heritage. (Compl. ¶ 4(g)). Thus, to the Court, it appears that Plaintiff's only cognizable equal protection claim alleges that Dressler and Montvale enforced their ordinances in a way that denied Plaintiff equal protection of the law by virtue of his national origin. Dressler moves for summary judgment for Plaintiff's failure to state such a claim.

The Fourteenth Amendment prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV. In order to state a § 1983 equal protection claim, a plaintiff must "prove the existence of purposeful discrimination." Shuman ex rel. Shertzer v. Penn Manor School Dist., 422 F.3d 141, 151 (3d Cir. 2005) (citing Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990)). Stated alternatively, the plaintiff must demonstrate that he or she "received different treatment from that received by other individuals *similarly situated*." Shuman, 422 F.3d at 151 (citing Andrews, 895 F.2d at 1478) (emphasis original). Here, Plaintiff has not come forward even with allegations concerning any disparate treatment, let alone *facts* sufficient to defeat Defendants' motion for summary judgment. Plaintiff does not allege that Dressler declined to issue summonses to Montvale residents of non-Italian-American background who were violating municipal ordinances. Rather,

Plaintiff makes only blanket statements insufficient to defeat Dressler's motion. For these reasons, Dressler's motion for summary judgment on Plaintiff's equal protection claim is GRANTED. Such claim is DISMISSED with prejudice.

### 2.      Liability of Municipality

Plaintiff asserts a § 1983 claim against Montvale because the actions of " . . . Dressler are attributable to the Defendant Borough of Montvale." (Compl. ¶ 6). Plaintiff also states that Dressler's actions were "the result of inadequate training and or supervision provided" by Montvale. (Compl. ¶¶ 7-9).

For a municipality to be held liable for damages under § 1983, the plaintiff must demonstrate that the municipality itself has a policy or custom that resulted in a violation of the plaintiff's constitutional rights. Monell v. Dep't of Soc. Servs.of N.Y., 436 U.S. 658, 690-91 (1978). It is well-settled that a municipality cannot be held liable under a theory of respondeat superior. Monell, 436 U.S. at 690-91. A custom can be established by showing a course of conduct that is "permanent and well settled." Id. at 691. Once established, the plaintiff is required to show that the municipality's custom caused his injury.  Berg v. Allegheny County, 219 F.3d 261, 276 (3d Cir. 2000) (citing Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404 (1997)).

Although Defendants purportedly move for summary judgment on Plaintiff's § 1983 claims as to Dressler and Montvale, Defendants' submissions to the Court focus wholly on the individual liability of Dressler. After a thorough review of the parties' submissions to the Court, it appears that Defendants have neglected to supply arguments specific to the liability of

Montvale. Defendants' submissions do not provide a separate legal analysis of Montvale's municipal liability. The only references to this Defendant is set forth in conclusory statements in the Defendants' moving and reply briefs. Such claim is thus inappropriate for summary judgment and the Court will DENY Defendants' motion for summary judgment WITHOUT PREJUDICE to the extent that it purports to move as to Montvale in connection with the Construction Summonses.[8]

**C.       Liability Arising out of the Cablevision Incident**

Plaintiff's "Third Cause of Action" sets forth a global 42 U.S.C. § 1983 claim against *all* Defendants. The claim alleges that "Defendants, acting in concert jointly and severally have interfered with and violated Plaintiff's rights under the New Jersey and Federal Constitution to due process of law, to equal protection of the laws and to be free of unreasonable searches and seizures." (Compl. ¶ 13). Plaintiff seeks compensatory damages[9] from all Defendants pursuant to 42 U.S.C. § 1983. However, since Plaintiff has specifically named Dressler, Coughlin, Park Ridge, and the PRPD in his other § 1983 claims, which are identical to the Third Cause of Action, the Court will construe this claim as directed only towards the Cablevision Incident. Accordingly, the Court will analyze this claim as alleged against Dill, the officer involved,

---

[8]Further, this Court notes that § 1983 claims may not be pursued against a police department when the municipality is named as a defendant. Since "the police department is merely an administrative arm of the local municipality," it "is not a separate judicial entity." DeBellis v. Kulp, 166 F. Supp. 2d 255, 264 (E.D.Pa. 2001) (collecting cases); see also Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 n. 4 (3d Cir. 1997). However, Defendants have not raised this argument at this juncture and the Court will thus leave it for a later moment.

[9]The Court notes that unlike Plaintiff's Fifth and Sixth Causes of Action, the Third Cause of Action seeks only compensatory damages. This count contains no reference to punitive damages.

Montvale, and the MPD.

Defendants move for summary judgment on Plaintiff's § 1983 claim pertaining to the Cablevision Incident and seek to have such claim dismissed with prejudice against Dill, Montvale, and the MPD. Defendants argue that Plaintiff is unable as a matter of law to hold Defendants liable for malicious prosecution and that, in the alternative, Dill is entitled to qualified immunity for his issuance of the obstruction summons.

### 1.      Individual Liability of Dill

#### a.      *Malicious Prosecution*

Plaintiff alleges that he was the victim of a malicious prosecution for which Dill is liable. This claim arises out of the Cablevision Incident wherein Dill issued a criminal summons to Plaintiff for obstruction of official business pursuant to N.J.S.A. 2C:29-1. Plaintiff was subsequently convicted by Municipal Judge McGeady and such conviction was ultimately reversed by Superior Court Judge Gaeta. Defendants move for summary judgment on the basis that Plaintiff is unable to state a prima facie case of malicious prosecution because Plaintiff is unable to establish that there was a seizure, and thus Plaintiff suffered no constitutional injury.

The Court notes that the Complaint appears to set forth a malicious prosecution claim based on violations of Plaintiff's due process and Fourth Amendment rights. However, as is the case with the same claim alleged against Dressler, Plaintiff makes no specific allegation in any submission to the Court regarding any violation of either his procedural or substantive due process rights. For the reasons set forth in Section (B)(1)(a) of the Discussion section of this Opinion, the Court will construe Plaintiff's § 1983 claim for malicious prosecution as based

14

solely on a violation of Plaintiff's Fourth Amendment rights.

To state a § 1983 claim for malicious prosecution pursuant to the Fourth Amendment, a plaintiff must establish the following elements:

> (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for purpose other than bringing the plaintiff to justice; (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Estate of Smith, 318 F.3d at 521 (citing Donahue, 280 F.3d at 379). Here, Dill asserts that Plaintiff's claim fails since Plaintiff is unable to demonstrate that he has suffered a deprivation of liberty as a consequence of the relevant legal proceedings.

For the purposes of this analysis the following facts are undisputed: Dill issued Plaintiff the obstruction summons at the Montvale Police Department, Plaintiff was at the police department by his own volition, Plaintiff had to appear before Municipal Judge McGeady to argue the summons, Judge McGeady convicted Plaintiff of violating N.J.S.A. 2C:29-1, Plaintiff appealed the conviction to the Superior Court and Judge Gaeta reversed the conviction. There is no evidence to establish that Plaintiff was arrested, detained or suffered any pre-trial detention or restrictions. Rather, Plaintiff was merely served with the summons which required him to appear in the Municipal Court on a certain date.

It is undisputed that Dill initiated a criminal proceeding against Plaintiff and that such proceeding ended in Plaintiff's favor when dismissed upon appeal. Plaintiff must establish the remaining elements of a claim for malicious prosecution: that Dill acted without probable cause,

that Dill acted maliciously, and that Plaintiff suffered a deprivation of liberty. Estate of Smith, 318 F.3d at 521. Defendants argue that Plaintiff fails to establish this final element.

The Third Circuit has noted that within the context of a claim for malicious prosecution based upon the Fourth Amendment, "[t]he type of constitutional injury the Fourth Amendment is intended to redress is the deprivation of liberty accompanying prosecution, not prosecution itself." DiBella v. Borough of Beachwood, 407 F.3d 599, 603 (3d Cir. 2005) (citing Gallo v. City of Philadelphia, 161 F.3d 217, 222 (3d Cir. 1998)). In DiBella, plaintiffs were prosecuted for criminal trespass and convicted. 407 F.3d at 600. Plaintiffs' convictions were ultimately reversed and plaintiffs brought a § 1983 claim for malicious prosecution. Id. Plaintiffs argued that their attendance at the trials for trespass constituted an unreasonable seizure of their persons. Id. at 601. However, the Third Circuit affirmed the District Court's determination that plaintiffs had failed to demonstrate a "seizure significant enough to constitute a Fourth Amendment violation" since plaintiffs "were only issued a summons; they were never arrested; they never posted bail; they were free to travel; and they did not have to report to Pretrial Services." DiBella, 407 F.3d at 603.

Here, it is undisputed that Plaintiff was only issued a summons, was never arrested, never posted bail, was free to travel, and did not have to report to Pretrial Services. Although Plaintiff appeared at his criminal trial before Municipal Judge McGeady, the DiBella Court determined that such an appearance is insufficient to demonstrate a seizure within the meaning of the Fourth Amendment. Accordingly, this Court GRANTS Dill's motion for summary judgment and DISMISSES Plaintiff's § 1983 claim for malicious prosecution with prejudice.

16

       b.     *Equal Protection*

Plaintiff also asserts an equal protection claim against Dill. Analogous to the situation with Dressler discussed <u>supra</u>, Plaintiff's Complaint sets forth no specific basis for such a claim. The only allegation in the Complaint relevant to a potential equal protection claim states that Montvale and the MPD have stereotyped Plaintiff due to his Italian heritage. (Compl. ¶ 4(g)). Accordingly, the Court construes Plaintiff's equal protection as one alleging that Dill and Montvale enforced the law in a way that denied Plaintiff equal protection of the law by virtue of his national origin.

As stated above in Section (B)(1)(b) of the Discussion section of this Opinion, Plaintiff must "prove the existence of purposeful discrimination" in order to successfully establish a § 1983 equal protection claim. <u>Shuman</u>, 422 F.3d at 151. Here, as above, Plaintiff has not come forward with facts sufficient to create a genuine issue as to whether Dill purposefully discriminated against Plaintiff because of his national origin. Plaintiff has not set forth evidence that Dill has encountered similar situations to that of the Cablevision Incident yet declined to issue summonses to those persons. Plaintiff's bare allegations are insufficient to defeat Defendants' motion. <u>Anderson</u>, 477 U.S. at 256-67. Dill's motion for summary judgment on Plaintiff's equal protection claim is GRANTED and such claim is DISMISSED with prejudice.

       c.     *Qualified Immunity*

Since qualified immunity is "an immunity *from suit*, rather than a mere defense to liability, it is imperative to resolv[e] immunity questions at the earliest possible stage in litigation." Under the qualified immunity doctrine, this Court must first ask whether "the facts

alleged, [when] viewed in the light most favorable to the party asserting the injury, show that the officers conduct violated a constitutional right." Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002) (citing Saucier v. Katz, 533 U.S. 194 (2001)). If the facts alleged are sufficient to demonstrate a constitutional violation, the court must then determine whether the right asserted was "clearly established" at the time of the officer's allegedly unlawful conduct. Id. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Saucier, 533 U.S. at 194.  Defendants are entitled to qualified immunity only if the Court can conclude, based on the undisputed facts in the record, that Defendants reasonably, though perhaps mistakenly, believed that their conduct was lawful in light of the clearly established law and the information known to them at the time of the alleged constitutional violation. Mantz v. Chain, 239 F. Supp. 2d 486, 496 (D.N.J. 2002).

Dill carries the burden of proof on the issue of qualified immunity. Beers-Capitol v. Whetzel, 256 F.3d 120, 142 n. 15 (3d Cir. 2001) (citation omitted). Given that this Court declines to find Dill liable under § 1983, the Court finds it unnecessary to reach the question of whether the doctrine of qualified immunity applies to him.

## 2.    Liability of Municipality and Police Department

Plaintiff maintains that the actions of Dill are attributable to Montvale and the MPD. (Compl. ¶ 6). Plaintiff alleges that such actions were the result of inadequate training and/or supervision and that the MPD also sustains "a pattern and practice of harassing Plaintiff, which Plaintiff has brought to the attention of various officials, including the past and present Mayors and Chiefs of police." (Compl. ¶10).

18

Although Defendants purportedly move for summary judgment on Plaintiff's § 1983 claims as to Dill, Montvale, and the MPD, Defendants' submissions to the Court focus wholly on the liability of Dill. After a thorough review of the parties' submissions to the Court, it appears that Defendants have neglected to supply arguments specific to the liability of Montvale or the MPD within the context of the Cablevision Incident. Defendants' submissions do not provide a separate legal analysis of the liability of the MPD or Montvale's municipal liability in connection with either Plaintiff's allegations regarding the obstruction summons or allegations of harassment by the MPD. The only references to these two Defendants are set forth in conclusory statements in the Defendants' moving and reply briefs. Such claims are thus inappropriate for summary judgment and the Court will DENY Defendants' motion for summary judgment WITHOUT PREJUDICE to the extent that it purports to move as to Montvale and the MPD in connection with the Cablevision Incident.[10]

**D.      Liability Arising out of the Pizzeria Incident**

Plaintiff's "Sixth Cause of Action" alleges that "[t]he actions of Ray Coughlin have violated Plaintiff's rights, under the Federal and New Jersey Constitutions, to equal protection of the law, due process of law, and freedom from unreasonable searches and seizures." (Compl. ¶ 17). This cause of action seeks compensatory and punitive damages from Coughlin, Park Ridge and the PRPD pursuant to 42 U.S.C. § 1983.

Defendant Coughlin moves for summary judgment on Plaintiff's § 1983 claims arising out of the Pizzeria Incident. Coughlin claims that Plaintiff is unable to prove that Coughlin

---

[10]This Court notes that note 8, <u>supra</u>, also pertains to Plaintiff's § 1983 claim asserted against the MPD.

violated his constitutional rights. To review, Coughlin allegedly threatened Plaintiff that if Plaintiff were to drive through Park Ridge, Coughlin would pull Plaintiff over. Plaintiff alleges that such action was attributable to Park Ridge and that Park Ridge failed to properly train and supervise Coughlin. Although Plaintiff's Complaint alleges that Coughlin, Park Ridge, and the PRPD have violated Plaintiff's rights to equal protection, due process, and freedom from unreasonable searches and seizures, it appears to the Court that Plaintiff truly only asserts that Coughlin "chilled" his right to travel in violation of his substantive due process rights. (Pl. Br. Opp'n at 6). Defendants move for summary judgment on this claim since Plaintiff is unable to demonstrate that Coughlin's alleged actions had any impact upon his travel to and in Park Ridge and Plaintiff is unable to establish municipal liability on the part of Park Ridge. (Def. Br. at 24).

### 1.       Individual Liability of Coughlin

To successfully raise a § 1983 claim against Coughlin, Plaintiff must demonstrate that Coughlin was acting under color of state law and that Coughlin's conduct deprived Plaintiff  "of rights, privileges, or immunities secured by the Constitution or laws of the United States." Powell, 189 F.3d at 400; see also Piecknick, 36 F.3d at 1255-56. Although the Supreme Court has not yet recognized such a right, the Third Circuit has recognized that a person has a constitutional right to intrastate travel. Lutz v. City of York, Pa., 899 F.2d 255, 268 (3d Cir. 1990). Such right is included within the context of a person's substantive due process rights and is "described as the right to travel locally through public spaces and roadways." Lutz, 899 F.2d at 268.

Here, Plaintiff alleges that his "constitutionally protected right to freedom of travel was

impinged by the threats of Park Ridge Police Department Sgt Coughlin." (Pl. Br. Opp'n at 6). However, beyond Plaintiff's bare allegations in the Complaint, Plaintiff points to no action of Coughlin that has infringed upon his right to travel the streets and public spaces of Park Ridge. To defeat a motion for summary judgment, the non-moving party cannot rest on mere allegations and must present actual evidence that establishes a genuine issue of material fact for trial. Anderson, 477 U.S. at 256-57. Without first demonstrating a violation of his constitutional rights, Plaintiff is unable to bring a § 1983 claim.

There is clear record support to indicate that Plaintiff has indeed traveled to and within Park Ridge since the Pizzeria Incident. During Plaintiff's February 28, 2005 deposition, Plaintiff testified that he avoided Park Ridge since his encounter with Coughlin. (Varriale Dep. 127:15-18, Feb. 28, 2005) However, Plaintiff later admitted that he had visited a Park Ridge service station "[t]o get cheap gas." (Varriale Dep. 127:22-24, Feb. 28, 2005). Plaintiff also testified that following the Pizzeria Incident, he visited the Chief of Police of Park Ridge to complain of Coughlin's behavior at the pizzeria. (Varriale Dep. 126:1-3, Feb. 28, 2005). Beyond Plaintiff's allegations that his right to travel intrastate, and more specifically, to travel to and within Park Ridge, was chilled, the Court can find no record support for such a contention. Without evidence of constitutional injury, Plaintiff may not maintain a § 1983 action against Coughlin. Coughlin's motion for summary judgment on Plaintiff's § 1983 claim is hereby GRANTED and such claim is DISMISSED with prejudice.

**2.      Liability of Municipality and Police Department**

Although Defendants purportedly move for summary judgment on Plaintiff's § 1983

claims as to Coughlin, Park Ridge, and the PRPD, Defendants' submissions to the Court focus wholly on the liability of Coughlin. After a thorough review of the parties' submissions to the Court, it appears that Defendants have neglected to supply arguments specific to the liability of Park Ridge or the PRPD. Defendants' submissions do not provide a separate legal analysis of the liability of either entity. The only references to these two Defendants are set forth in conclusory statements in the Defendants' moving and reply briefs. Such claims are thus inappropriate for summary judgment and the Court will DENY Defendants' motion for summary judgment WITHOUT PREJUDICE to the extent that it purports to move as to Park Ridge and the PRPD.[11]

**E.      Common Law Malicious Prosecution**

Plaintiff also alleges a claim for common law malicious prosecution against Dill, Montvale, and the MPD in conjunction with Plaintiff's prosecution pursuant to N.J.S.A. 2C:29-1. (Compl. ¶ 11). Plaintiff seeks compensatory damages for this alleged violation. (Compl. ¶ 11). Defendants Dill, Montvale and the MPD move for summary judgment on this claim on the basis that Plaintiff fails to meet the required elements to state a claim for malicious prosecution.[12]

**1.      Individual Liability of Dill**

---

[11]This Court notes that note 8, <u>supra</u>, also pertains to Plaintiff's § 1983 claim asserted against the PRPD.

[12]Defendants also move for summary judgment on this claim on the basis that Plaintiff is barred from bringing such a claim for failure to comply with the requirements of the New Jersey Tort Claims Act. Although New Jersey has extended the notice requirement to include intentional torts, the decision in <u>Velez v. City of Jersey City</u>, 180 N.J. 284, 286 (2004) made such a requirement prospective. Thus, Plaintiff's claim of malicious prosecution which accrued before the date of the <u>Velez</u> decision, is not subject to the tort claims requirement regarding provision of notice. Accordingly, Plaintiff's failure to service a notice of claim upon Defendants is not fatal to the claim of malicious prosecution.

Dill moves for summary judgment on Plaintiff's claim for common law malicious prosecution. Dill argues that Plaintiff's claim must be dismissed since Plaintiff is unable to establish that Dill's actions were motivated by malice or that Dill acted without probable cause.

Under New Jersey law, "[a] malicious prosecution action arising out of a criminal prosecution requires proof: (1) that the criminal action was instituted by the defendant against the plaintiff, (2) that it was actuated by malice, (3) that there was an absence of probable cause for the proceeding, and (4) that it was terminated favorably to the plaintiff." Lind v. Schmid, 67 N.J. 255, 262 (1975). The plaintiff carries the burden of proof on every element and "[u]pon failure to prove any one, the cause must fail." Id.

It is undisputed that Dill instituted a criminal action against Plaintiff when he issued the obstruction summons and it is undisputed that the reversal of Plaintiff's conviction constituted a termination in his favor. However, Defendants argue that Plaintiff fails to establish that Dill issued the summons with probable cause and without malice.

"The essence of the cause of action is lack of probable cause, and the burden of proof rests on the plaintiff" to establish that probable cause did not exist. Lind, 67 N.J. at 262-63. A determination of whether probable cause existed is a question of law for the Court where the facts are undisputed.[13] Lind, 67 N.J. at 266 (citation omitted). The plaintiff must demonstrate that the defendant did not have probable cause to set the criminal action in motion. Id. at 263. That is, "[w]hen the defendant put the proceedings in motion the circumstances were such as not to warrant an ordinarily prudent individual in believing that an offense had been committed." Id.

---

[13]Accordingly, Plaintiff's contention that the elements of malicious prosecution are a "question for a jury" is without merit. (Pl. Br. Opp'n at 3).

Here, the uncontested facts establish that Dill had probable cause when he instituted the criminal prosecution against Plaintiff. When Dill issued the obstruction summons, he had a reasonable belief that Plaintiff had violated N.J.S.A. 2C:29-1. This statute provides that: "a person commits an offense if he purposely obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from lawfully performing an official function by means of flight, intimidation, force, violence, or physical interference or obstacle, or by means of any independently unlawful act." N.J.S.A. 2C:29-1. It is undisputed that Cablevision's ladder lay inside Plaintiff's fence, completely on Plaintiff's property.[14] Next, Dill was dispatched to Plaintiff's house. After arriving on the scene, Dill saw that the ladder, property of Cablevision, was on Plaintiff's property. Dill asked Plaintiff whether he could retrieve the ladder and return it to the Cablevision employee. Plaintiff refused Dill entry. According to a police report written by Dill, after Dill repeated his request to enter Plaintiff's property, Plaintiff stated in a loud voice "You are not allowed on my property and you can't have the ladder, I want to take a picture of it first." (Pl. Br. Ex. H). Dill then cautioned Plaintiff that he could be arrested for possession of stolen property, but Plaintiff responded by locking the gate to his property. (Id.) Later that same day, while Plaintiff was in the Montvale police station, Dill served Plaintiff with a criminal summons for violation of N.J.S.A. 2C:29-1.

Plaintiff has not disputed Dill's account of the events on April 30, 2002, yet Plaintiff argues that Dill issued the summons only to harass and annoy him. This Court disagrees. From the record, it is apparent that Plaintiff purposely locked the gate to his property in response to

---

[14]Although the manner in which it got there is disputed, those facts are not relevant to the instant analysis.

Dill's request that Plaintiff allow the officers to retrieve the property of Cablevision. The Court determines that an ordinarily cautious man, after viewing property of another on Plaintiff's property and seeing Plaintiff lock his gate in response to a request for retrieval stated by a uniformed police officer, would believe that Plaintiff was guilty of the offense charged. Lind, 67 N.J. at 263 (citing In Lane v. Pennsylvania R.R. Co., 78 N.J.L. 672, 674 (E. & A. 1910)). See State v. Berlow, 284 N.J. Super. 356, 360-61 (Law Div. 1995) (holding that purposefully slamming and locking a door in the face of police officers constitutes "an affirmative act of interference."). For these reasons, this Court determines that Plaintiff has failed to carry his burden of proof on this element of malicious prosecution. Dill's motion for summary judgment on Plaintiff's claim for common law malicious prosecution is GRANTED and such claim is DISMISSED with prejudice.[15]

### 2. Liability of Municipality and Police Department

Montvale and the MPD purport to move for summary judgment on Plaintiff's common law malicious prosecution claim and seek to have such claim dismissed. However, the Court discerns no legal analysis in Defendants' submissions which pertains to the liability of either entity in conjunction with such claim. Rather, Defendants' submissions focus entirely on the merits of Plaintiff's claim as alleged only against Dill. Without proper legal argument specific to the liability of Montvale or the MPD, entities that by their nature, are exposed to a different scope of liability than Dill, the Court will construe Defendants' motion for summary judgment as

---

[15]Since a plaintiff's failure to prove any one element of a malicious prosecution claim is fatal, the Court does not need to conduct an analysis of the malice element. See Lind, 67 N.J. at 262.

partial. The Court hereby DENIES WITHOUT PREJUDICE Defendants' motion for summary judgment on Plaintiff's common law claim for malicious prosecution.

**F.     Common Law Malicious Abuse of Process**

Plaintiff sets forth a common law claim of abuse of process against Dill, Montvale, and the MPD and seeks compensatory and punitive damages on this claim. (Compl. ¶ 12). Plaintiff alleges that the issuance of the obstruction summons by Defendants constituted an abuse of process. (Compl. ¶ 12). Defendants move for summary judgment on this claim on the basis that Plaintiff is unable to demonstrate that Defendants engaged in "further acts" which perverted the use of judicial process against Plaintiff.

Under New Jersey law, a claim for malicious abuse of process "lies for the improper, unwarranted and perverted use of process after it has been issued." Tedards v. Auty, 232 N.J.Super. 541, 549 (App. Div. 1989). This is contrasted with the tort of malicious prosecution which occurs when a defendant causes "process to issue maliciously and without reasonable or probable cause." Id.  A claim for malicious abuse of process requires a Plaintiff to demonstrate that defendant committed "'further acts' whereby he demonstrably uses the process as a means to coerce or oppress the plaintiff." Tedards, 232 N.J. Super. at 550 (quoting Gambocz v. Apel, et al., 102 N.J. Super. 123, 130-31 (App. Div. 1968)). That is, issuance of the process without evidence of further acts is insufficient to state a claim for abuse of process.

Here, Plaintiff explicitly states that his malicious abuse of process claim is based upon "[t]he issuance of a Criminal Summons Complaint [sic] by Defendants Borough of Montvale, Borough of Montvale Police Department and Police Officer William Dill." (Compl. ¶ 12). There

26

is no allegation in the Complaint of any "further act" by any of these Defendants sufficient to establish a claim for malicious abuse of process. The only act Plaintiff complains of is the issuance of the summons for obstruction and the proceeding thereupon. Such allegation is contained only in the Complaint. The Court has reviewed Plaintiff's opposition brief and counter-statement of material facts and can find no reference to the tort of malicious abuse of process, let alone any dispute which creates a genuine issue of material fact sufficient to defeat Defendants' motion. Without evidence of further acts, threats, or abuse of process following the issuance of the obstruction summons, Plaintiff may not make out a tort claim for malicious abuse of process. Klesh v. Coddington, 295 N.J. Super. 51, 64 (Law Div. 1996). Plaintiff has failed to establish that Dill, Montvale, or the MPD used process as a means to coerce the Plaintiff.[16] Accordingly the Court will GRANT Defendants' motion for summary judgment on Plaintiff's common law claim for malicious abuse of process. Such claim is DISMISSED as alleged against Dill, Montvale, and the MPD.

## G.    New Jersey Law Against Discrimination

Plaintiff alleges that "Defendants [sic] actions, since about 1984, have established a pattern and practice of harassing Plaintiff on the basis of his ethnicity" contrary to the NJLAD, 10:5-12(a), et seq.. (Compl. ¶ 15). In conjunction with this claim, Plaintiff seeks punitive and

---

[16]Here, unlike the remainder of Defendants' submissions to the Court, Defendants provide a separate analysis of the specific liability of Dill, Montvale, and the MPD. On page 19 of Defendants' moving brief, Defendants argue that Plaintiff's malicious abuse of process claim should be dismissed because "Plaintiff cannot demonstrate that Defendants Dill, the Borough of Montvale, or the Montvale Police Department had ever engaged in any activity following the issuance of the Summons that would 'pervert or abuse' the legitimate purpose of that process." (Def. Br. at 19). The Court will thus dismiss Plaintiff's claim for malicious abuse of process against Dill, Montvale, and the MPD.

compensatory damages from all named Defendants. (Compl. ¶ 15). Defendants move for summary judgment on this claim on the basis that Plaintiff's claims of discrimination pre-dating February 3, 2002 are time-barred and Plaintiff's allegations of discrimination post-February 3, 2002 are insufficient to state a claim under the NJLAD against any Defendant.

The statute of limitations for claims pursuant to the NJLAD is two years. Hall v. St. Joseph's Hosp., 343 N.J. Super. 88 (App. Div. 2001). Since Plaintiff's Complaint was filed on February 3, 2004, any NJLAD claim based on conduct prior to February 3, 2002 is accordingly time-barred. However, the New Jersey Supreme Court has established an exception to this general rule for circumstances involving continuous tortious conduct. Ali v. Rutgers, 166 N.J. 280, 285 (2000). Defendants argue that Plaintiff has failed to allege or establish that the alleged discrimination by the Defendants resulted in a continual and cumulative pattern of conduct sufficient to toll the statute of limitations. In Plaintiff's opposition brief, Plaintiff makes no mention of this theory nor of Defendants' statute of limitations arguments. Plaintiff has failed to create a genuine issue of fact with respect to the continuing violation theory. Accordingly, allegations in the Complaint which pre-date February 3, 2002 will not be considered by this Court within the context of Plaintiff's NJLAD claim.

The Court has examined the Complaint and Plaintiff's opposition brief for allegations or argument pertaining to post-February 3, 2002 harassment by Defendants purportedly motivated by Plaintiff's national origin. Plaintiff has not come forward with even an *allegation* that the Cablevision Incident, the issuance of the Construction Summonses, or Pizzeria Incident were motivated by Plaintiff's Italian heritage. While the Complaint contains general allegations that Plaintiff's family was stereotyped by the MPD and its officers, there is no allegation of this sort

dated after February 3, 2002, and more importantly, no allegation which attributes any actions of the Defendants to Plaintiff's national origin. To establish a claim under the NJLAD, Plaintiff must prove that the Defendants withheld some privilege or facility from Plaintiff on account of his national origin. N.J.S.A. 10:1-3.[17] There is nothing in the record or in Plaintiff's submissions to the Court which establishes such discrimination. Accordingly, Defendants' motion for summary judgment on Plaintiff's NJLAD claim is GRANTED. Such claim is DISMISSED with prejudice as alleged against all Defendants.

## CONCLUSION

For the reasons set forth herein, the Court GRANTS in part and DENIES in part Defendants' motion for summary judgment.[18]

DATED: June 29, 2006                              __/s/ Jose L. Linares_____

                                                 United States District Judge

_____

[17]Although Defendants argue Plaintiff's NJLAD based upon the merits, the Court notes that it is unclear whether Plaintiff may properly name Defendants as defendants in an NJLAD claim. However, that issue is not before the Court at this time.

[18]For the sake of clarity, the following claims remain: 1) § 1983 claims for malicious prosecution and equal protection as alleged against Montvale and the MPD in conjunction with the Cablevision Incident and the Construction Summonses; 2) common law claims for malicious prosecution as alleged against Montvale and the MPD; and 3) a § 1983 claim for violation of Plaintiff's substantive due process rights as alleged against Park Ridge and the PRPD